311 So.2d 860 (1975)
STATE of Louisiana
v.
Michael Odell DAVIS.
No. 55823.
Supreme Court of Louisiana.
April 24, 1975.
*861 E. Joseph Bleich, Robert G. James, Wright, Dawkins, James, Hogg & Bleich, Ruston, for defendants-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ragan D. Madden, Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Defendant, Michael Odell Davis, and Wilbert Mayfield, Jr. were jointly charged by bill of information with the crime of armed robbery in violation of R.S. 14:64. Mayfield entered a plea of guilty. Davis was tried by a jury and found guilty as charged. He was subsequently sentenced to 25 years imprisonment at hard labor without parole, probation or suspension of sentence. On appeal to this court, Davis relies upon seven assignments of errors for reversal of his conviction and sentence. During oral argument, defendant abandoned Assignment of Error No. 6.

FACTS
Shortly after nine o'clock a.m. on June 11, 1974, the Grambling Branch of the First National Bank of Ruston was robbed by Wilbert Mayfield of a sum in excess of $100,000.00 which was placed in a pillow case and taken by the robber. An automobile belonging to one of the bank employees was used by Mayfield to effect his escape. Michael Odell Davis, the defendant here, was waiting outside the bank in his Thunderbird and followed Mayfield as he left in the stolen car. This was in accordance with the preconceived plan of Mayfield and Davis that Mayfield would commit the robbery of the bank and Davis would remain in his car outside the bank to effect their getaway, or, if Mayfield succeeded in taking another car, Davis would follow and later pick up Mayfield when the stolen car was abandoned. After traveling west about one mile, Mayfield, according to plan, abandoned the car he had stolen, got into the Thunderbird driven by Davis and hid in the back. Davis drove west on U.S. Highway 80 to Simsboro, Louisiana, where he entered Interstate 20 and proceeded west. In the meantime, Deputy Harold McCarthy of the Bienville Parish Sheriff's office had received information of the Grambling bank robbery and immediately drove his patrol car to the Arcadia exit of Interstate 20, arriving there about 9:45 a.m. After being parked on the shoulder for a few minutes, he observed Davis approaching at a high rate of speed. The deputy gave chase, turning on his siren and flashing lights. Davis then pulled off the highway and stopped on the shoulder. Deputy McCarthy pulled up behind Davis and started walking toward the car. As McCarthy approached, Davis partially exited his car, putting his left foot on the ground, and asked if the deputy was looking for him. McCarthy answered in the affirmative. When the deputy was some fifteen feet away, Davis fired several shots at him, grazing McCarthy's leg with a bullet. Davis then sped off in a westerly direction. A very short distance away, Davis' car blew a tire at a spot where a tank truck and a station wagon were parked on the shoulder. Davis and Mayfield approached this location where a man, a woman and her two childern were standing. First, the robbers sought the keys to the station wagon, Davis pointing a gun at the head of the woman. The keys were in the possession of the driver of the truck. Since they were unsuccessful in acquiring these keys, Davis and Mayfield went to the tank truck and attempted to start it. At this time, sirens from approaching police cars could be heard. The robbers left the truck and ran into a nearby heavily wooded area, where they stayed until their capture later that night.

*862 ASSIGNMENTS OF ERRORS NOS. 1, 2, 3, 4 AND 5
These assignments of errors are based on the trial court's denial of motions for mistrial wherein defendant objected to the introduction into evidence of other acts of misconduct committed by defendant subsequent to the bank robbery. These acts consisted of the shooting of Deputy McCarthy and his attempts to steal the station wagon and truck. Defendant contends that the use of the other offenses required that he be given notice by the state under State v. Prieur, 277 So.2d 126 (La.1973). No notice was here given. Thus, it is argued that a mistrial should have been ordered.
The state argues that the evidence of the other offenses was admissible without the Prieur notice since the evidence concerning these latter acts forms part of the res gestae, an exception to the Prieur notice provisions.
State v. Prieur provides that, when the state intends to offer evidence of other criminal offenses under the exceptions outlined in R.S. 15:445 and 446, the state must give appropriate notice of its intention. It is specifically provided that: "No such notice is required as to evidence of offenses which are part of the res gestae...." Evidence of other crimes has been held admissible as part of the res gestae. La.R.S. 15:447 and 448 (1950). See, State v. Witherspoon, 292 So.2d 499 (La.1974); State v. Leichman, 286 So.2d 649 (La.1973); and State v. Jefferson, 284 So.2d 882 (La.1973). Also, no Prieur notice is required as to convictions admissible for impeachment purposes. La.R.S. 15:495 (1950), as amended, La.Acts 1952, No. 180, § 1. State v. Prieur, supra. It should be further observed that the Prieur notice is required only where the state intends to offer evidence of other offenses under the exceptions in R.S. 15:445 and 446, i. e., acts relevant to show system, knowledge or intent. Here, the evidence of other crimes was not introduced for the purpose of any of these exceptions. Rather, the evidence was part of the proof necessary to prove that Davis participated as a principal in the crime of armed robbery. We must bear in mind that he had not been seen by any of the witnesses in the bank. His guilt was sought to be established by virtue of the fact that he acted in concert with Mayfield in the robbery as the driver of the getaway car. Davis was observed as the driver of the Thunderbird in close proximity to the bank immediately prior to the robbery. He was also seen leaving the area alone, whereas Mayfield left in another vehicle taken from a bank employee. They were later apprehended separately near the same area. Therefore, the evidence of the events that transpired between the robbery and their ultimate arrest was essential to the state's case against Davis as a principal to the crime of armed robbery. Likewise, evidence of Davis' actions during the escape which he and his accomplice attempted (flight) was relevant and necessary to show his guilt as a principal to the crime charged.
Clearly, the evidence of defendant's shooting of Deputy McCarthy and his attempts to steal the station wagon and truck was not that of related offenses introduced to show system, knowledge or intent. Hence, we conclude that no Prieur notice was required since the evidence of the other offenses was part of the proof of the crime for which defendant was on trial. Also, the evidence of the other offenses was admissible, as it was relevant to the material issue of the case, i. e., guilt of defendant as principal to the crime of armed robbery, and its probative value outweighed the prejudicial effect. La.R.S. 15:435 and 441 (1950). See, e. g., State v. Banks, 307 So.2d 594 (La.1975); State v. Moore, 278 So.2d 781 (La.1973); State v. Jordan, 276 So.2d 277 (La.1973). Thus, the trial court correctly denied the motions for mistrial. These assignments of errors are without merit.

*863 ASSIGNMENT OF ERROR NO. 7
It is contended that the trial court erred in denying defendant's motion to suppress his oral confession as the state did not carry its burden of proving that his confession was free and voluntary. Defendant asserts that his confession was made as a result of fear induced by Deputy McCarthy's menacing statements made to him immediately before he orally confessed to the FBI agents.
The hearing on this motion established that this deputy, who had earlier been shot at by defendant, was alone with defendant for some four or five minutes while he was changing to jail garb. It was here that defendant claims the threats occurred which induced his confession given immediately thereafter to the agents. Defendant testified that the deputy told him, while pointing his finger: "I was going to be there a long time and if I didn't cooperate that something was going to happen and he was going to get a chance to pay me back for what I did to him." It was admitted by defendant, and the hearing on the motion to suppress clearly shows, that Deputy McCarthy was unarmed, that he never struck or cursed defendant, nor did he explicitly threaten him or mention a confession. The deputy admitted that he was angered because of the shooting, but denied making any threats. The FBI agents to whom defendant orally confessed immediately after being in the room with McCarthy testified that the confession was free and voluntary. Defendant admitted that he made no complaint to these agents concerning any threats of McCarthy.
Considering the testimony adduced at the hearing on the motion to suppress, we conclude, as did the district judge, that the conversation with Deputy McCarthy did not amount to a threat which thereafter induced defendant's confession. A careful review of the testimony offered at the hearing establishes that the state has met its burden under La.R.S. 15:451 to affirmatively establish that the confession was free and voluntary.[1] Therefore, the trial court correctly ruled that the oral inculpatory statement was admissible.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] La.R.S. 15:451 (1950) provides:

Before what purposes [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.