427 So.2d 1155 (1983)
STATE of Louisiana
v.
Michael ANTHONY.
No. 82-K-1664.
Supreme Court of Louisiana.
February 23, 1983.
*1156 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., for relator.
Michele Fournet, Asst. Public Defender, Indigent Public Defender Office, for respondent.
DIXON, Chief Justice.
On September 21, 1981 defendant Michael Anthony was indicted by the grand jury for first degree murder, in violation of R.S. 14:30.[1] The defendant moved for a bill of particulars requesting the aggravating circumstances to be relied on in seeking the death penalty. C.Cr.P. 905.4. In response the state declared that it intended to show proof of a perpetration and attempted perpetration of an aggravated burglary, and proof that the defendant had a significant prior history of criminal activity. A motion to quash was filed by defendant, alleging that flight from the scene of an aggravated burglary is not in the perpetration of the burglary, and, therefore, is not an aggravating circumstance within the intent of the first degree murder statute. R.S. 14:30(1). On May 28, 1982 the trial court heard and granted the motion to quash. This court granted the state's application for writs.
At the argument on the motion to quash, the state and the defendant agreed to the following facts:
"MR. HESTER: Well, Judge, for the record, this is a fantastically complicated case but to give you the basic facts upon which the State relies on to establish this as a first degree murder is we allege that Michael Anthony burglarized the apartment of William Squire which is located at 710 Park Boulevard; that he left that apartment, went a couple of blocks and snatched a lady's purse and that he was pursued and the purse was retrieved. He escaped by going back into the Squire's apartment at which time he armed himself with a knife. So there we have the aggravated burglary. He left the apartment and unfortunately Miss Summers, Miss Angela Summers, age eighty three who lived at 720 Park Boulevard, in other words either next door or one house down, appartently (sic) saw him in his attempt to escape and at that time he *1157 slashed her throat and killed her. So our theory is that the aggravated circumstance is aggravated burglary because an escape is a part of the res gestae of crime. That's essentially it. It's much more complicated than that. I am just trying to give you the basic theory of this case.
THE COURT: Ms. Bonnie?
MS. JACKSON: Yes sir. The defense agrees with the State that the State's evidence if true would establish those facts but it's our position that the burglary took place upon the first entry into the apartment. He left the apartment, allegedly committed a purse snatching and returned to the apartment but that the purpose for returning to the apartment was not to commit burglary, that he did not have the intent to commit a theft or other felony upon entering the apartment. His purpose for entering the apartment on the second time was to hide or conceal himself from detection as a result of the purse snatching and that upon leaving the scene of the burglary that had happened previously it was not flight from the scene of an aggravated burglary and was not part of the res gestae of the aggravated burglary at that point and that under those circumstances his flight from the scene would not be part of the res gestae of an aggravated burglary and therefore was not committed during the perpetration or attempted perpetration of an aggravated burglary. THE COURT: Can you give me any indication as to the time frame we address? MR. HESTER: Of course, nobody actually witnessed the murder but it had to be a matter of seconds or maybe a minute from the time he exited that apartment of Mr. Squire's and ran across Miss Summers, a matter of feet, too. As far as distance, maybe a hundred feet or less."
The state contends that since the murder was committed within the "res gestae" of the felony charged, it was committed "in the perpetration" of the felony. Because the aggravated burglaries and the homicide were parts of one continuous transaction and were closely connected in point of time and place, the state argues that the first degree murder statute should apply. For support, the state refers to Conrad v. State, 75 Ohio St. 52, 70-71, 78 N.E. 957, 959-960 (1906), which held that:
"... when a burglary has been planned, in order to carry it out, or, in other words, to perpetrate it, the burglar must go to the building; he must break and enter it; he may effect his purpose or attempt it, and he must come away; for the very nature of the transaction implies that the burglar will not remain in the building. An infinite variety of things may happen in carrying out the crime. The perpetrator may kill a man while going to or trying to enter the building, he may kill a man after he has broken and entered the house, and he may kill a man while trying to escape, either in the house or outside of it. Can any sound reason be suggested why the killing in any one of these instances might be in the perpetration of or attempt to perpetrate a burglary, and not so in the others? The crime of murder in the first degree as defined by the statute (section 6808, Rev.St. 1906) certainly cannot by any reasonable construction be confined to the moment of breaking and entering the house, the crucial point of the definition of burglary; ..."
R.S. 14:30 defines first degree murder as "the killing of a human being ... when the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated ... burglary ..." Aggravated burglary falls expressly within the purview of Louisiana's felony murder rule.
Aggravated burglary is defined as "the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender, (1) Is armed with a dangerous weapon; or (2) After entering arms himself with a dangerous weapon; or (3) Commits a battery upon any person while in such a place, or in entering or leaving such a place." R.S. 14:60.
*1158 The definition of aggravated burglary in R.S. 14:60 can be distinguished from the circumstances which may occur "in the perpetration" of a particular aggravated burglary for purposes of R.S. 14:30. The definition is invariable. The particular act must meet the requisites of the statutory definition in order to be classified as an aggravated burglary. However, the things which occur in perpetrating the aggravated burglary vary with every case. These include the method of entry, the particular felony or theft to be committed, and the means of escape.
Many courts in deciding whether a killing which occurred after the commission of the felony was committed "in the perpetration of" the felony have held that the killing was within the ambit of the statute if it was within the "res gestae" of the underlying felony. See, e.g., Bissot v. State, 53 Ind. 408 (1876); State v. Squire, 292 N.C.494, 234 S.E.2d 563, cert. denied, Brown v. North Carolina, 434 U.S. 998, 98 S.Ct. 638, 54 L.Ed.2d 493 (1977); Conrad v. State, supra. The courts have generally spoken in terms of the "res gestae" of the crime when faced with the problem of determining when the underlying felony terminated for purposes of applying the felony murder doctrine. Payne v. State, 81 Nev. 503, 406 P.2d 922 (1965), cert. denied, 391 U.S. 927, 88 S.Ct. 1826, 20 L.Ed.2d 666 (1968). Res gestae, however, is merely a "label for the period within which a killing may be statutory felony murder." Cadmus, The Beginning and End of Attempts and Felonies Under the Statutory Felony Murder Doctrine, 51 Dick.L.Rev. 12, 18 (1946). The res gestae of the crime begins at the point where an indictable attempt is reached and ends where the chain of events between the attempted crime or completed felony is broken, with that question usually being a fact determination for the jury. Cadmus, supra.
In the instant case the indictable event occurred when the defendant broke into the residence the first time with the intent to commit a felony or theft therein. He left the residence with stolen goods and then committed three other offenses within a short period of time  a purse snatching, a second unauthorized entry, and a homicide. At trial for any of these offenses, evidence of the other offenses could be admissible as part of the res gestae.
The res gestae doctrine in Louisiana is primarily an evidentiary tool. Evidence that forms part of the res gestae, such as spontaneous utterances and declarations, is always admissible. State v. Williams, 383 So.2d 369 (La.1980), cert. den., 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828 (1981). Evidence of other crimes has also been held admissible as part of the res gestae. State v. Davis, 311 So.2d 860 (La.1975).
"Res gestae" language has not been used in conjunction with the first degree murder statute in Louisiana, even though it has been frequently used in this manner in other jurisdictions. See, e.g., Pickle v. State, 345 So.2d 623 (Miss.1977); Haskell v. Commonwealth, 218 Va. 1033, 243 S.E.2d 477 (1978). Within the context of the felony murder rule, the term "res gestae" has been used to signify that the felony and the homicide form part of a continuous transaction (People v. Chavez, 37 Cal.2d 656, 234 P.2d 632 (1951)); that the homicide be incidental to the felony (Parson v. State, 222 A.2d 326 (Del.Sup.1966), cert. denied, 386 U.S. 935, 87 S.Ct. 961, 17 L.Ed.2d 807 (1967)); and that there be no break in the chain of events between the felony and the homicide (Payne v. State, 81 Nev. 503, 406 P.2d 922 (1965), cert. denied, 391 U.S. 927, 88 S.Ct. 1826, 20 L.Ed.2d 666 (1968)). These definitions are similar to the description of res gestae set forth in R.S. 15:448.[2] When "res gestae" has been used to determine whether the homicide was committed in the perpetration of a certain felony, it seems to have been a short way of saying that the underlying felony and the homicide form part of one continuous transaction which occurred without a significant break in the chain of events.
*1159 This court in State v. Bessar, 213 La. 299, 34 So.2d 785 (1948), has previously addressed the argument of defendant that the underlying felony had been completed at the time of the homicide.[3] In that case this court recognized that in many jurisdictions the felony murder rule "has been deemed broad enough to include homicides committed in attempts to escape from the scene of the crime `where the killing is done immediately after the conclusion of the project, for the purpose of preventing detection.'" State v. Bessar, supra 34 So.2d at 789. Only a few jurisdictions have adopted "the theory of technical completion of the felony" in finding that the homicide committed shortly after the felony was not done "in the perpetration" of the felony. In Bessar this court chose to follow the majority of jurisdictions and found that "one of the aims of [defendants'] common design or conspiracy was to retreat safely and undetected from the scene with the fruits of their joint enterprise." Id. 34 So.2d at 789.
State v. Bessar, supra, concerned a murder committed while fleeing from the scene of an aggravated robbery. In the instant case, the murder was committed after an aggravated burglary was perpetrated. We find that the same principles apply to both escaping robbers and escaping burglars. A burglary can be committed with equal or greater violence than a robbery. In addition, the need to retreat safely and undetected from the scene with the stolen property is equally important. State v. Bessar, supra. Furthermore, other states do not distinguish between homicides occurring during flight from a burglary and flight from a robbery in applying the felony murder rule.[4]
This court has recently applied a "continuous transaction" analysis in upholding a second degree murder conviction. In State v. West, 408 So.2d 1302, 1305 (1982), we found that the homicide was committed during the perpetration of an armed robbery, even though the robbery had occurred several blocks away. This court reasoned:
"Defendant argues that the killing did not occur in the course of an armed robbery because the robbery occurred several blocks away and had been completed before McDonald shot the victim. We are not persuaded by this line of reasoning. The armed robbery and the shooting which followed constituted essentially a single criminal incident. The offenders never left the victim; instead they escorted her from the scene of the armed robbery to the location where the shooting took place. Under these circumstances it is apparent that the killing occurred as part of the armed robbery."
In the case before us the second entry of the house, according to the defense, was not an aggravated burglary, because it was not shown (under the agreed facts) that defendant intended to commit "a felony or any theft therein." R.S. 14:60. To the contrary, defendant's admitted actions can be said to prove that his second entry was, indeed, to effect his escape, because he then and there armed himself with the knife, and again took to flight, only to encounter the unfortunate victim. Proof of those actions would be adequate proof of defendant's intent to steal arms to facilitate his flight. The homicide occurring during defendant's flight from the aggravated burglary could be found by the trier of fact to be first degree murder under R.S. 14:30(1). Therefore, the trial judge was in error in sustaining the motion to quash.
*1160 The ruling of the trial judge is reversed, the motion to quash is overruled, and the case is remanded to the district court for further proceedings.
DENNIS, J., concurs.
BLANCHE, J., concurs and assigns reasons.
BLANCHE, Justice (concurring).
I concur in the result only. I do agree with the majority opinion that a jury could find that Anthony's second entry into the apartment was an aggravated burglary. In my opinion, the homicide occurred within the res gestae of this second burglary; therefore, I believe that the trial court erred in quashing the first degree murder indictment. However, in my view, neither the purse snatching, the second entry into the apartment, nor the homicide fall within the res gestae of the first burglary.
To fall within the evidentiary concept of res gestae, the activity must be a necessary ingredient of the criminal act, an immediate concomitant thereto, or form, in conjunction with the criminal activity, one continuous transaction. LSA-R.S. 15:447, 448; State v. Richard, 245 La. 465, 158 So.2d 828 (1964); State v. Hills, 241 La. 345, 129 So.2d 12 (1961). There must be a very close connexity between the offense(s) charged and the other crimes sought to be classified as part of the res gestae. State v. Haarala, 398 So.2d 1093 (La.1981); cf. State v. James, 396 So.2d 1281 (La.1981); State v. Rochon, 393 So.2d 1224 (La.1981). In my opinion, the purse snatching was too remote from the initial burglary to be classified as within the res gestae of that crime.
There is no dispute over the facts of this case; the only dispute arises over the proper legal characterization of the activities described thereby. A short time after Anthony was observed leaving the apartment following the first burglary, he snatched a woman's purse. Even though there was some degree of proximity in time and distance to the burglary, there are no factors, given the circumstances of this case, which would bring the purse snatching within a "very close connexity" to the burglary within the meaning of State v. Haarala, supra.
These two incidents represent wholly separate crimes conceived at different times and carried out in different manners. The intent to commit each crime was independently derived. In my opinion, these two crimes were sufficiently remote in time and distance such that it is improper to characterize the purse snatching as part of the res gestae of the first burglary. Thus, this independent crime insulates the second burglary and homicide from the res gestae of the first burglary.
The majority opinion does hold that the second burglary may be characterized as an aggravated burglary because once therein Anthony armed himself with the knife ultimately used to kill the victim. LSA-R.S. 14:60 requires that Anthony must have entered the apartment with the intent to commit a felony or theft therein. The requisite intent may be inferred from the circumstances of the transaction. LSA-R.S. 15:445; State v. Moore, 302 So.2d 284 (La. 1974).
In my opinion, a jury could infer from the circumstances surrounding Anthony's entry into the apartment following the purse snatching that he possessed the requisite intent to commit a felony or theft therein. The evidence is uncontroverted that he took the knife and, apparently, he took a blue sportcoat which was found near the victim. But on the other hand, the jury might well conclude that Anthony entered the apartment solely to escape his pursuers.
The homicide occurred immediately after Anthony fled the apartment this second time and was committed in order to facilitate his escape. It was committed as an immediate concomitant to the second burglary within the meaning of LSA-R.S. 15:447, 448. cf. State v. West, 408 So.2d 1302 (La.1982); State v. Haarala, supra.
For these reasons, I concur in the reversal of the trial court ruling quashing the first degree murder indictment.
NOTES
[1] R.S. 14:30 states in pertinent part:

"First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery;..."
[2] "To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." R.S. 15:448.
[3] See also State v. Taylor, 173 La. 1010, 139 So. 463, cert. denied, 285 U.S. 547, 52 S.Ct. 408, 76 L.Ed. 938 (1931), where the defendant was found guilty of murder. The homicide was committed while escaping from an armed robbery.
[4] See People v. Fuller, 86 Cal.App.3d 618, 150 Cal.Rptr. 515 (1978); People v. Hickman, 12 Ill.App.3d 412, 297 N.E.2d 582 (1973), cert. denied, 421 U.S. 913, 95 S.Ct. 1571, 43 L.Ed.2d 779 (1975); State v. Adams, 339 Mo. 926, 98 S.W.2d 632 (1936); Francis v. State, 104 Neb. 5, 175 N.W. 675 (1919); Conrad v. State, 75 Ohio 52, 78 N.E. 957 (1906); Lakes v. State, 61 Ok.Cr. 252, 67 P.2d 457 (1937); Commonwealth v. Carey, 368 Pa. 157, 82 A.2d 240 (1951); Gore v. Leeke, 261 S.C. 308, 199 S.E.2d 755 (1973), cert. denied, 416 U.S. 958, 94 S.Ct. 1975, 40 L.Ed.2d 309 (1974); State v. Ryan, 192 Wash. 160, 73 P.2d 735 (1937). See generally Annot., 58 A.L.R.3d 851, 962-975 (1974).