440 So.2d 110 (1983)
STATE of Louisiana
v.
John SHILLING.
No. 82-KA-1820.
Supreme Court of Louisiana.
October 17, 1983.
Rehearing Denied November 18, 1983.
*111 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, William C. Credo, III, Patrick Leitz, Asst. Dist. Attys., for plaintiff-appellee.
Martha E. Sassone, Staff Appeals Counsel, Gretna, for defendant-appellant.
CALOGERO, Justice.[*]
The Jefferson Parish Grand Jury indicted defendant John Shilling, along with one Herman Billiot, for the first degree murder of James Stache, a violation of La.R.S. 14:30. After trial by jury, Shilling was found guilty as charged and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence.[1] Shilling appeals his conviction urging three assignments of error. For the reasons which follow we find no merit to the defendant's arguments, and, accordingly, affirm the conviction and sentence.
The facts involved in this case were previously reported in State v. Billiot, 421 So.2d 864, 866 (La.1982).
... Through the testimony of two female eyewitnesses it was proven that Billiot, Shilling and another unidentified male were out on the town visiting various Gretna and Marrero, Louisiana, night spots. Late in the evening they met with Pamela LeBlanc at one of these nightspots and still later met with Stephanie (Penny) Plaisance at another night spot. This group went to yet another bar where Ms. LeBlanc met the victim, James Stache. After they had all consumed some unknown quantity of beer, the party of six left in Shilling's automobile travelling towards Lafitte, Louisiana. The unidentified male passed out in the car and remained unconscious for the remainder of the night. On the way to Lafitte, in the early pre-dawn hours, Shilling stopped his automobile twice, presumably so he and the others could answer the call of nature. The first place *112 he stopped was too well lit and there were too many people nearby watching another car on fire. Shilling then drove down the road a little further and stopped a second time. Billiot, Shilling and the victim, with the help of the defendants got out of the car and walked about ten (10) feet from the side of the vehicle. Billiot and Shilling then began to beat and kick the victim, both pulling knives to cut and stab him. The defendants beat the victim senseless and robbed him of $30.00. Billiot and Shilling then returned to the others and drove away to Shilling's residence in Lafitte, leaving the victim for dead on the side of the road. Soon after arriving at his residence, Shilling and Billiot left the two women and returned to the scene of the initial attack to find Shilling's lost knife. When they arrived, they found the missing knife and the victim, still alive, trying to hitchhike.
The defendants put the victim into their automobile and drove a little farther down the road to a more secluded spot. They dragged the victim from the back seat out to the edge of a bayou; each of them punching the victim in the throat, Billiot first, then Shilling; whereupon Shilling then slit the victim's throat with his knife, pushed his head under water and stood on him until the victim eventually drowned. The defendants returned to Shilling's residence to pick up the two women and take them home, telling them how they had finished off the victim. Shilling also threatened the women with death if they told anyone about the killing.

ASSIGNMENT OF ERROR NO. 1
Shilling contends that the trial judge committed reversible error when he refused to grant a motion to quash the first degree murder indictment.
Defendant was indicted for first degree murder under La.R.S. 14:30(1) which reads in pertinent part:
First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of ... armed robbery....
In essence defendant argues that he was not engaged in the perpetration of an armed robbery at the time the murder was committed. Defendant contends that the armed robbery and murder were two distinct acts. In support of this theory defendant emphasizes the fact that the victim was abandoned after the initial assault and robbery when the defendant and his companions drove away to the defendant's trailer.
In two recent decisions of this Court we have considered this very question: whether an underlying felony had been completed before commission of a homicide. State v. West, 408 So.2d 1302 (La.1982); State v. Anthony, 427 So.2d 1155 (La.1983).
In State v. West, the defendant was indicted for second degree murder. At that time second degree murder was defined in part as "The killing of a human being when the offender is engaged in the perpetration or attempted perpetration of... armed robbery ... even though he had no intent to kill." The defendant in West argued that the homicide did not occur in the course of an armed robbery because the robbery occurred several blocks away from the scene of the killing and had been completed before the killing. In rejecting that argument we stated at 408 So.2d 1302:
The armed robbery and the shooting which followed constituted essentially a single criminal incident. The offenders never left the victim; instead they escorted her from the scene of the armed robbery to the location where the shooting took place. Under these circumstances it is apparent that the killing occurred as part of the armed robbery.
In State v. Anthony, we analyzed the issue of whether a killing which took place after commission of a felony was committed in the perpetration of the felony. We observed that courts in other jurisdictions, in deciding the question, have held *113 that the homicide is committed during the course of the felony if it is within the "res gestae" of the underlying felony.[2] In noting that the res gestae doctrine is principally an evidentiary tool which has never been used in Louisiana to define the parameters of the first degree murder statute, we stated at 427 So.2d 1158:
When "res gestae" has been used to determine whether the homicide was committed in the perpetration of a certain felony, it seems to have been a short way of saying that the underlying felony and the homicide form part of one continuous transaction which occurred without a significant break in the chain of events.
Applying the above reasoning, as well as the "continuous transaction" analysis of State v. West, we held that a homicide which occurred during the defendant's flight from the scene of an aggravated burglary could be found by the trier of fact to be first degree murder under La.R.S. 14:30(1), a homicide committed during the course of an aggravated burglary.
Defendant here attempts to distinguish his case from West because in West the offenders were never separated from the victim during commission of the armed robbery and the murder. Defendant argues that since the defendants in this case had abandoned the victim for a short period of time after the initial assault, the sequence of events does not constitute a continuous transaction within the ambit of the first degree murder statute. We are not persuaded by this argument.
Although the passage of time and/or the fact that the perpetrator leaves the scene of the robbery may place a later killing of the robbery victim outside the scope of the first degree murder statute, these factors must be considered in light of other circumstances involved in the case in question. The circumstances in the case before us were established by two witnesses who testified that after the first brutal attack and the victim's being left for dead, the assailants drove immediately to defendant Shilling's trailer. Once inside Shilling and his companions proceeded to rinse off the blood which had gotten on Shilling's hand and Billiot's knife. Realizing that they had lost Shilling's knife, the two men returned to the scene of the crime to retrieve the knife. Upon their arrival they discovered the victim, covered with blood and attempting to hitchhike. After putting the victim inside their automobile, they drove to a more secluded area where they finished him off.[3] It is reasonable to view the armed robbery as not being concluded until defendant and his companion, to avoid detection, or simply to reclaim the knife for future use, made off with the knife they used to murder and rob the victim.
Under these circumstances the jury did reasonably find that the entire incident, from the time the victim Stache was assaulted and robbed on the side of the road beside the car until he was drowned in the bayou shortly thereafter, constituted commission of first degree murder, i.e., a specific intent killing during perpetration of an armed robbery. Therefore, the trial judge did not commit reversible error when he refused to grant the motion to quash the indictment.
Accordingly, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
By this assignment defendant challenges the refusal of the trial judge to accept a *114 special requested jury charge concerning the requirements of first degree murder. The special requested charge reads as follows:
"If you jurors are not convinced beyond a reasonable doubt that the death of the victim occurred at the time and during the robbery and not at a time subsequent to the actual robbery, then you should not consider 1st degree murder as to the defendant's guilt to that charge."
R.S. 14:30
"is engaged in the perpetration or attempted perpetration of armed robbery."
It is the duty of the trial judge to give a requested charge, which does not require qualification, limitation, or explanation and is not included in the general charge or in another special charge to be given, if it is wholly correct and pertinent to the case. La.C.Cr.P. art. 807. The record reflects that the trial judge instructed the jury on the law applicable to both first degree murder and second degree murder. The requested charge was sufficiently included in the substance of the trial judge's general charges.
Accordingly, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment defendant contends that the trial court committed reversible error by refusing to grant defendant's motion for severance.
A pretrial motion filed by Shilling urged the trial court to sever the trial of the defendants because of the possibility that Billiot would be called as a witness for or against Shilling. The record indicates that a hearing was not held on this motion. Apparently defendant Shilling's pretrial motion was based on the possibility that Billiot's confession might be used and that Billiot would testify against Shilling as part of a plea bargain agreement. The prosecutor, however, decided not to use the confession and Billiot declined the plea bargain offer. The motion for severance was not reurged by Shilling prior to trial and the trial court was never informed that antagonistic defenses would be offered. The next time the question arose was prior to closing arguments. At that time counsel for Shilling advised the trial court that he would request a mistrial if Billiot's attorney attempted to shift the blame to Shilling during closing arguments.
In his closing argument counsel for Billiot mentioned certain facts surrounding the murder which indicated that Shilling was the more culpable of the two in that it was Shilling who actually inflicted the stab wounds and held the victim's head under water to ensure his death. During this portion of closing argument by Billiot's attorney, counsel for Shilling requested a mistrial because he thought the co-defendant's attorney was trying to shift the entire blame to Shilling. Defendant seems to contend that the closing argument on behalf of Billiot amounted to an antagonistic defense. We disagree.
At trial neither Billiot or Shilling testified. Shilling relied on the testimony of two witnesses to establish an alibi for his whereabouts on the night of the murder. Billiot did not present any witnesses on his own behalf. During the presentation of evidence there was no attempt by either defendant to shift the blame to the other. The testimony at trial clearly implicated both defendants as principals. Facts recited by Billiot's attorney, which indicated that the extent of participation varied to some degree, had already been established at trial by the state's chief witnesses who were with the defendants on the night of the murder. In State v. Simmons, 381 So.2d 803 (La.1980), a first degree murder case, one of the defendants requested a severance based on the fact that his co-defendant had made a confession against his interest thus creating an antagonistic defense. Confessions of both defendants purported to shift the blame for the shooting to the other. This Court upheld the trial court's denial of the motion for severance. In so doing we stated that "The degree of blame each seeks to cast upon the other does not suffice to warrant severance." id. *115 at 806. Likewise, in this case we conclude that statements made by Billiot's attorney, which indicated that Shilling was the more culpable of the two, do not amount to an antagonistic defense.
Accordingly, this assignment of error lacks merit.

Decree
For the reasons assigned, defendant's conviction and sentence are affirmed.
AFFIRMED.
LEMMON, J., concurs.
NOTES
[*] Julian Bailes, Justice ad hoc sitting for Associate Justice Walter F. Marcus, Jr.
[1] Billiot was convicted of second degree murder and sentenced to life imprisonment. His conviction and sentence were affirmed by this Court. State v. Billiot, 421 So.2d 864 (La. 1982).
[2] Res gestae is defined by La.R.S. 15:448 which reads: "To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction."
[3] As noted in the recitation of facts, after the defendants returned, Shilling slit the victim's throat and held his head under water until he drowned. At trial the coroner who examined the victim's body testified that the immediate cause of death was drowning. The coroner also stated that one of the stab wounds to the right portion of the victim's back had caused bleeding into the chest cavity. The coroner thought that this particular wound could have resulted in death if the bleeding had continued unabated with no medical attention. It appears from the evidence that this wound was inflicted during the initial attack on the victim.