908 So.2d 79 (2005)
STATE of Louisiana, Appellee
v.
Charles R. GEORGE, Appellant.
No. 39,772-KA.
Court of Appeal of Louisiana, Second Circuit.
July 1, 2005.
*81 Carey J. Ellis, Louisiana Appellate Project, for Appellant.
Iley Evans, District Attorney, John F. Aplin, Assistant District Attorney, for Appellee.
Before BROWN, STEWART, and CARAWAY, JJ.
BROWN, C.J.
Defendant, Charles R. George, was convicted of second degree murder, and sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The sentence was to run consecutively with another life sentence he received for aggravated kidnapping. Finding no error, we affirm defendant's conviction and sentence.

Facts
The victim, Dondi Walker Copeland, was a real estate agent in West Monroe, Louisiana. On May 11, 2001, the owner of the realty company which employed Mrs. Copeland contacted the West Monroe Police Department because the victim had not been seen or heard from for several hours. At about 1:00 p.m. that afternoon, Phyllis Wood, who was driving along a rural section of La. Hwy. 4 in Caldwell Parish, saw a woman tumble from a small white car onto the road. Ms. Wood stopped and called 9-1-1. The woman Ms. Wood saw was Dondi Walker Copeland, who was pronounced dead at the scene. The cause of death was cranial cerebral trauma.
Carl Layne Womack was driving a log truck ahead of the white car. He stated that he first noticed the car following him as he pulled onto George Road. Womack said that the driver of the white car honked at him, but did not pass him although he gave it ample time to do so. Womack never saw the occupants of the vehicle.
The victim's car was discovered parked on a side road approximately one-half mile from where her body was found. The sleeve of a red sweater was seen hanging from the trunk. The victim had been seen wearing a red sweater. Boot prints led away from the car. A search for the driver of the car was unsuccessful. The next day, defendant, who had spent the night in the woods, was stopped while walking along La. Hwy. 548. Defendant told the officers that "he was the guy they were looking for." After being taken into custody and Mirandized, defendant gave a statement which was recorded by both video and audio tape.
While his story changed during questioning, it can be summarized as follows. Defendant arranged by telephone for the victim to show him some houses. Defendant parked his vehicle at the Glenwood Medical Center and walked to the real estate office. He stated that he and Mrs. Copeland looked at houses and that she stopped at least once to unlock a door for a repairman. Afterward, she drove defendant back to the medical center, where his car was parked. Defendant grabbed her wrist, told her he needed $150 or $200, and forced her to drive her car to her bank so she could withdraw money from the A.T.M. He then gave her directions to a camp his family owned located on George Road in Caldwell Parish.
*82 Defendant pulled the victim inside the camp house and told her that he intended to have sex with her. The victim prayed out loud as defendant made her undress, and he attempted to have intercourse with her. He was unsuccessful, prematurely ejaculating on her left leg. Defendant cleaned the victim's leg up with a towel and told her to get dressed. Defendant described the victim's clothing as a white blouse, printed skirt, and red sweater. Defendant forced the victim to get into the trunk of her car and drove off. Defendant remembered following a log truck and meeting a dually pick-up truck. While he was driving the car, the trunk opened and the victim jumped out. Defendant stated that he continued driving before parking the car and running into the woods where he stayed until his apprehension by police.
The state at trial presented additional evidence supporting defendant's statement. The victim's co-worker reported to police that she had seen the victim with defendant around 9:30 a.m. on the date of the offense. Jeremy Foster testified that he saw the victim with defendant at a house "around lunch time." Another witness testified that she saw the victim and an unknown man around 12:30 or 1:00 p.m. A photograph from Bank One shows the victim's vehicle at the A.T.M. at 11:45 a.m. Defendant had $200 in $20 bills on his person when he was arrested. Hair and semen were found on a towel at the camp house with DNA that matched both the victim and defendant. The parties stipulated that the victim's autopsy showed no evidence of sexual trauma. Both the victim's and defendant's DNA were found on the steering wheel of the victim's car.
Defendant was convicted of second degree murder under the felony murder doctrine, with the underlying felony being attempted forcible rape. He was sentenced to life imprisonment without benefit on July 28, 2004, the sentence to run consecutively with any other sentence(s).[1] Defendant has appealed the conviction and sentence.

Discussion

Sufficiency of the Evidence
Defendant argues that the evidence was insufficient to support a conviction of second degree murder. He contends that he cannot be convicted on his own uncorroborated confession, citing State v. Willie, 410 So.2d 1019 (La.1982), cert. denied, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 723 (1984); and Summit v. Blackburn, 795 F.2d 1237 (5th Cir.(La.) 1986). According to defendant, there is no witness who can place him at the scene of the alleged attempted forcible rape or the victim's death. He further claims that the state failed to prove attempted forcible rape. Finally, defendant argues that the timing and locations were such that the attempted forcible rape and the victim's death were not connected.
The proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App. 2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The Jackson standard is applicable in cases involving both direct and circumstantial evidence.
*83 This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984).
Defendant was convicted of second degree murder. As it pertains to this case, second degree murder is the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of one of a number of enumerated felonies. La. R.S. 14:30.1. In the defendant's case, the underlying felony was attempted forcible rape. Forcible rape is committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim when the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. La. R.S. 14:42.1. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27.
An accused party cannot be legally convicted on his own uncorroborated confession without proof that a crime has been committed by someonein other words, without proof of the corpus delicti. State v. Celestine, 452 So.2d 676 (La.1984), cert. denied, 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 154 (1984); State v. Willie, supra; State v. Cutwright, 626 So.2d 780 (La.App. 2d Cir.1993), writ denied, 93-2931 (La.02/25/94), 632 So.2d 761. The corpus delicti must be proven by evidence which the jury may reasonably accept as establishing that fact beyond a reasonable doubt. State v. Willie, supra. The purpose of the corroboration rule is to test the reliability or trustworthiness of a confession. Warszower v. United States, 312 U.S. 342, 61 S.Ct. 603, 85 L.Ed. 876 (1941); State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190, cert. denied, 534 U.S. 885, 122 S.Ct. 194, 151 L.Ed.2d 136 (2001).
Defendant's statement is direct evidence of the attempted forcible rape. He admitted numerous times that he tried to have sex with the victim without her consent. His description of the events showed that the victim reasonably believed that resistance would not prevent the rape. As mentioned earlier, the victim was praying out loud and saying that she knew she had to cooperate.
A towel seized from defendant's family camp had a hair with the victim's DNA on it. Another hair taken from the towel had a DNA profile that was consistent with being a mixture from both the victim and the defendant. Three semen stains from the towel tested positive for a mixture of the victim's and the defendant's DNA. The DNA evidence from the towel proves that the victim was in the camp and that defendant had sperm emission there. While seminal fluid was detected on the victim's vulvar swab, the crime lab expert concluded that there was no presence of male DNA in the fluid.
Witnesses saw defendant and the victim together at the real estate office and looking at houses together. The victim's red sweater, which she was wearing that day, was found hanging from the trunk. The car was located about one-half mile from the body, and the body was found in the approximate area described by the defendant. Defendant stated that he followed a log truck and met a dually pick-up truck on the highway. The drivers of both of *84 these vehicles testified that they saw the victim's white car on the road that day. Defendant said he made the victim take money out of an A.T.M. A photograph from Bank One shows that the victim's car was at its A.T.M. at 11:45 a.m. on the day of her death. Also, defendant had $200 on him when he was arrested.
A mixture of DNA from both the defendant and the victim was found on the steering wheel of the car, which supports defendant's statement that he drove the victim's car. Defendant's appearance at the time of his arrest supported his claim that he had been hiding in the woods. Therefore, defendant's repeated admission that he attempted to rape the victim, supported by the DNA evidence, was sufficient to convince a rational trier of fact that the state proved attempted forcible rape beyond a reasonable doubt and that the victim died because of falling out of the trunk of the moving vehicle.
Defendant also argues that even if the state proved the attempted forcible rape, they did not prove second degree murder beyond a reasonable doubt because the timing and locations of the alleged rape and the homicide were too far apart. The supreme court has recognized that for second degree murder, the underlying felony and the homicide need not occur simultaneously as long as they take place during a single, "continuous transaction without a significant break in the chain of events." State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Shilling, 440 So.2d 110 (La.1983); State v. Anthony, 427 So.2d 1155 (La. 1983); State v. Bessar, 213 La. 299, 34 So.2d 785 (1948).
The victim died when she either jumped or fell out of the trunk of her car as defendant was fleeing the camp, which was where the attempted forcible rape occurred. Defendant stated that he told the victim to get into the trunk when they were leaving the camp. Defendant stated that "it wasn't very far" from the camp to where she jumped out of the trunk. Defendant also stated that he only drove the victim's car after they left the camp and that this time frame was only about 15 minutes. Carl Layne Womack testified that he saw a white vehicle pull behind his log truck on George Road and that the car followed him a couple of miles after turning onto Hwy. 557 from George Road and then approximately one-half mile on Hwy. 4. He said that after this the car was no longer behind him.
The state cited State v. Anthony, supra, and State v. Bessar, supra, in its argument that the two crimes were part of a continuous transaction and that therefore the victim's death was within the "res gestae" of the attempted forcible rape. In State v. Bessar, the homicide occurred during the defendant's escape after committing aggravated robbery and attempted aggravated rape. More recently, the supreme court found that a murder committed while a defendant escaped from the scene of an aggravated burglary was part of a continuous transaction. See State v. Anthony, supra. The court held that the killing that occurred during the defendant's flight was committed during the perpetration of the aggravated burglary. Id.
The defendants in State v. Shilling, supra, left the victim after committing armed robbery and then returned later to kill the victim after a defendant realized he had left his knife at the scene of the crime. The court ruled that the jury reasonably found the entire transaction to be one criminal incident and that it constituted first degree murder during perpetration of an armed robbery. Id.
*85 In Charles George's case, there was a brief time period between the attempted forcible rape and the victim's death. There was also a change of location between the two occurrences. However, defendant never left the victim as the defendants did in State v. Shilling, supra. After defendant forced the victim into the trunk of her car, she remained there as he fled the scene of the attempted forcible rape until she jumped or fell to her death. A rational fact finder could have found that the attempted forcible rape and the victim's death constituted one continuous transaction. This evidence shows that the state proved beyond a reasonable doubt that the victim died during the perpetration or attempted perpetration of forcible rape and that defendant was guilty of second degree murder.
We note that during this entire time an aggravated kidnapping was occurring in Ouachita Parish and for that reason it was not used as the underlying felony on the murder charge. Defendant was convicted of this kidnapping prior to the trial of the instant charge.

Excessive Sentence
Defendant argues that consecutive life sentences are excessive. Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:30.1. If a defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the trial court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. La. C. Cr. P. art. 883.
Defendant claims that the court failed to adequately comply with La. C. Cr. P. art. 894.1, which sets forth sentencing guidelines to be considered by the trial judge when imposing a sentence. According to defendant, the trial court erred when it did not give specific reasons for its decision to order defendant's sentence to run consecutively rather than concurrently. However, defendant failed to timely file a motion to reconsider sentence under La. C. Cr. P. art. 881.1. When a defendant fails to timely file this motion, the appellate court's review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App. 2d Cir.02/25/98), 707 So.2d 164.
The trial court imposed the sentence mandated by statutory language and the sentence is neither grossly out of proportion to the seriousness of the offense nor is it a purposeless and needless infliction of pain and suffering. Also, it is within the trial court's discretion to order sentences to be served consecutively and this sentence does not shock the sense of justice. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). Therefore, this assignment is also without merit.

Conclusion
For the reasons set forth above, defendant's conviction and sentence are affirmed.
NOTES
[1] Defendant had been tried and convicted for the aggravated kidnapping of the victim in Ouachita Parish and received a life sentence, also without benefit in that case.