CLARK, Justice.*
| ,We granted this writ application in order to determine whether the court of appeal erred in modifying the defendant’s conviction for aggravated burglary. For the reasons that follow, we reverse the ruling of the court of appeal and reinstate the ruling of the trial court.
*221 FACTS AND PROCEDURAL HISTORY
On June 13, 2007, Joseph Daniel Smart drove by the home of his girlfriend, Melissa Flournoy, to check on it, as he frequently did. When Smart noticed that the back screen door was open, he called the Arcadia Police Department. A subsequent investigation revealed that the house had been burglarized, furniture had been broken, a computer had been disconnected, and several video game consoles and games had been taken. The police dusted the home for fingerprints prior to leaving the house.
Shortly after he and the police left, Smart revisited the house and discovered that someone was inside. He again called the Arcadia Police Department. Before the police arrived, Smart entered the home and noticed footprints leading to a window on the second floor. Thinking that the person may have been attempting to leave the 12home through the window, Smart exited the house and went around to the back. As he came around to the back, Smart saw the defendant and another man, DeShan Dunn, exiting the back door of the home. When the defendant saw Smart, he attempted to leave the house toward the back line of the yard, while Dunn ran around the house toward the front. Smart chased the defendant and caught him near some bushes in the back yard, about forty-five feet from the house.
When Smart grabbed the defendant, the defendant bit Smart on the arm, broke loose, and again attempted to leave. Smart chased the defendant again and caught him in the middle of the road, where the defendant bit Smart again, and attempted to escape once more. Smart finally caught the defendant about fifteen feet further away in a neighboring yard, pinned him to the ground, and held him until the police arrived.
On July 8, 2007, the defendant was charged by bill of information with the aggravated burglary of Ms. Flournoy’s home. The defendant pled not guilty and was tried by jury on November 17 and 18, 2008. The jury found that the defendant had violated La.Rev.Stat. § 14:60, aggravated burglary, and convicted him of that crime. The trial court denied defendant’s motions for post verdict judgment of acquittal and new trial, and imposed a sentence of ten years at hard labor. On September 23, 2009, the court of appeal issued an opinion modifying the verdict, vacating the conviction for aggravated burglary, and rendering, instead, a conviction for simple burglary of an inhabited dwelling. State v. Brooks, 44,730 (La.App. 2 Cir. 9/23/09), 24 So.3d 917. We granted the state’s writ of certiorari to review the correctness of the court of appeal’s opinion. State v. Brooks, 2009-2323 (La.5/21/10), 36 So.3d 220.
LAW
The jury convicted the defendant of aggravated burglary, a violation of Title 14, Section 60, of the Louisiana Revised Statutes. The statute reads:
|s§ 60. Aggravated burglary
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
Whoever commits the crime of aggravated burglary shall be imprisoned at hard *222 labor for not less than one nor more than thirty years.
La.Rev.Stat. § 14:60 (Emphasis added).
There is no dispute that the defendant, without authority, entered the dwelling inhabited by Ms. Flournoy and her children, with the intent to commit a theft. Instead, as recognized by the court of appeal, the single issue in dispute is whether the batteries committed by the defendant during his attempt to escape apprehension after the burglary was discovered can form the basis for an aggravated burglary conviction within the meaning of the statute. This issue turns on the meaning given to the phrase “leaving such place,” as contained in the statute.
DISCUSSION
The starting point in the interpretation of any statute is the language of the statute itself. State v. Johnson, 2003-2998, p. 11 (La.10/19/04), 884 So.2d 568, 575. “When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.” La.Rev.Stat. § 1:4. Similarly, “[t]he articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.” La.Rev.Stat. 14:3.
The purpose of statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law. Theriot v. Midland Risk Insurance Co., 95-2895, p. 3 (La.5/20/97), 694 So.2d 184, 186. “Legislative intent is the fundamental question in all cases of statutory interpretation; rules of statutory construction are designed to ascertain and enforce the intent of the statute.” Theriot, 95-2895 at 3, 694 So.2d at 186. The best evidence of legislative intent or will is the wording of a statute. Johnson, 2003-2993 at 12, 884 So.2d at 575.
As stated by the court of appeal, criminal statutes are subject to strict construction under the rule of lenity. State v. Carouthers, 618 So.2d 880, 882 (La.1993). The principle of lenity is premised on the idea that a person should not be criminally punished unless the law provides a fair warning of what conduct will be considered criminal. State v. Piazza, 596 So.2d 817, 820 (La.1992). The rule is based on principles of due process that no person should be forced to guess as to whether his conduct is prohibited. Piazza, 596 So.2d at 820.
In interpreting the statute, the court of appeal stated:
Our construction of the statutory phrase “Commits a battery upon any person while in such place, or in entering or leaving such place” indicates that the legislature contemplated circumstances in which there is a close connection between the battery and the structure, such as when a burglar commits a battery on a victim to gain entry to the inhabited dwelling or structure, or commits a battery while within the structure, or commits a battery on a victim in order to leave the structure. In other words, there needs to be a relationship between the battery and either the burglar’s entry into, exit from, or presence in the structure. Once the burglar has exited the structure, the crime is complete.
Brooks, 44,730 at p. 4, 24 So.3d at 919 (emphasis in original). As can be seen, the court of appeal replaced the word “leav- *223 tag” with a different, albeit similar, word, “exiting,” rather than examining the word “leaving” in the context in which it is used in the statute.
IsRather than “to exit,” “to leave” means “to go away from.” Webster’s New Collegiate Dictionary, (1977). Similarly, the Random House College Dictionary Revised Edition, (1988), defines “to leave” as “to go away or depart from, as a place, a person, or a thing: quit.” Likewise, Blacks Law Dictionary 973 (9th ed.2009) defines “to leave” as “to depart; voluntarily go away; quit (a place).” None of these sources equate “leaving” with “exiting,” as postulated by the court of appeal.
Further, as stated, the statute requires that a battery be committed either in a dwelling, or while entering or leaving a dwelling. According to the court of appeal’s interpretation, one could only be “leaving” a dwelling while one is “in” a dwelling, because if one had exited the dwelling and were, thus, outside, the crime of burglary would be complete. While the rule of lenity requires the courts to provide narrow interpretations of criminal statutes, State v. Carr, 1999-2209 (La.5/26/00), 761 So.2d 1271, it does not require courts to interpret a statute in such ways as to render words contained in the statute, such as the word “leaving,” without meaning.
Likewise, instead of focusing upon the relationship between the battery and the structure, as the court of appeal does, we interpret the statute as requiring a connection between the battery and the burglary[1] in order to protect individuals from injury during the perpetration of the burglary.[2] Under the court of appeal’s interpretation, if a homeowner chased a burglar to his front door and the burglar, in an attempt to escape, committed a battery on the homeowner just inside the front Ifidoor, an aggravated burglary was committed. However, if the burglar, in his escape attempt, battered the homeowner just outside the front door, no aggravated burglary would have occurred, even though the burglar’s intent and actions were exactly the same. Similarly, if a homeowner or the police chased a burglar out a second floor window onto the roof where the burglar committed a battery during his capture, the court of appeal’s interpretation would find that no aggravated burglary had occurred, because the battery happened after the burglar had “exited” the structure and “the crime was complete.” Such an interpretation is too restrictive and, as we have stated, renders the term “leaving” without meaning.
A “continuous transaction” analysis supports our conclusion that the battery was part and parcel of the burglary. This Court has ruled that a killing which takes place after commission of a felony is committed during the “perpetration” of the felony when the underlying felony and the homicide form part of one continuous transaction which occurred without a significant break in the chain of events.[3] *224 State v. Brooks, 505 So.2d 714, 719-20 (La.1987). Furthermore, a homicide which occurs during a defendant’s flight from the scene of an aggravated burglary could be found by the trier of fact to be first degree murder under La.Rev.Stat. 14:30(1), a homicide committed during the course of an aggravated burglary. State v. Anthony, 427 So.2d 1155 (La.1983). In reaching this conclusion, we stated:
[W]hen a burglary has been planned, in order to carry it out, or, in other words, to perpetrate it, the burglar must go to the building; he must break and enter it; he may effect his purpose or attempt it, and he must come away; for the very nature of the transaction implies that the burglar will not remain in the building. An infinite variety of things may happen in carrying out the crime. The perpetrator may kill a man while going to or trying to enter the building, he may kill a man after he has broken and entered the house, and he may kill a man while trying to escape, either in the house or outside of it. Can any sound reason be suggested 17why the killing in any one of these instances might be in the perpetration of or attempt to perpetrate a burglary, and not so in the others?
Anthony, 427 So.2d at 1157 (quoting Conrad v. State, 75 Ohio St. 52, 70-71, 78 N.E. 957, 959-960). Likewise, can any sound reason be suggested why a battery committed during the perpetration of a burglary while trying to escape, either in a house or outside of it, should not be considered “leaving such place?”
We find that the determination whether a burglar is leaving or has left is not limited by a particular time or distance for the purpose of La.Rev.Stat. § 14:60, but instead is determined on a case by case basis by the fact finder. The facts of this case show that Mr. Smart saw defendant leaving Ms. Flournoy’s dwelling and immediately pursued him. Smart caught the defendant approximately forty-five feet from the back door, at which time the defendant committed a battery on Mr. Smart in an attempt to leave the scene. Whether this set of facts comported with the elements of the crime of aggravated burglary found in La.Rev.Stat. § 14:60 is an inquiry that fell squarely within the jury’s discretion. Ultimately, the jury found defendant guilty of aggravated burglary. We find that this finding of fact is supported by the proper interpretation of the criminal statute.
CONCLUSION
For the reasons stated above, we conclude that the court of appeal erred in modifying the jury’s verdict. We reinstate defendant’s original conviction and sentence for aggravated burglary.
COURT OF APPEAL MODIFICATION OF VERDICT REVERSED; JUDGMENT OF CONVICTION OF SIMPLE BURGLARY OF AN INHABITED DWELLING VACATED; ORIGINAL VERDICT OF THE JURY AND SENTENCE IMPOSED BY THE TRIAL COURT REINSTATED.

 Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.

. All burglaries, whether simple or aggravated, necessarily require a connection with a structure of some type.

. The notes to La.Rev.Stat. § 14:60 state that "[t]here has been added to the present section, 'commits a battery upon any person while in such place, or in entering or in leaving such place.’ Most burglary statutes appear to be limited to armed offenders. It appears, however, that one of the fundamen-tais of the crime is the danger or harm to human life. A battery upon another, though not with a dangerous weapon, may prove very serious. It appears consistent with the concept that there must be an apparent danger to human life to constitute burglary.”

.First degree murder is the killing of a human being ... when the offender has specific intent to kill ... and is engaged in the perpe *224 tration ... of [an enumerated felony]. La. Rev.Stat. § 14:30(1).