# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1438

**STATE OF LOUISIANA**

**VERSUS**

**AARON FRANCOIS**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR123773.2
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and John E. Conery, Judges.

**CONVICTION FOR ARMED ROBBERY VACATED.**
**CONVICTION FOR SECOND DEGREE MURDER AFFIRMED.**
**REMANDED WITH INSTRUCTIONS.**

**Michael Harson**
**District Attorney, 15th JDC**
**Patrick D. Magee**
**Assistant District Attorney**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**Edward John Marquet**
**Attorney at Law**
**Post Office Box 53733**
**Lafayette, LA 70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Aaron Francois**

**PICKETT, Judge.**

## FACTS

On February 23, 2009, the defendant, Aaron Francois, and Kevin Dee Gildhouse devised a plan to commit a robbery because they needed gas money.[1] They discussed robbing a store, but the defendant had never done anything like that, and he was uncomfortable with the idea. The defendant suggested they instead rob a pizza delivery man or a cab driver, and Gildhouse told him to make the call. However, the defendant also said at one point the robbery was Gildhouse's idea.

As the pair set out, Gildhouse was armed with a Taurus .357 handgun they had stolen from the defendant's cousin, and the defendant was armed with a Taurus .38 Special a friend had given him. They first went to a Texaco station, where the defendant borrowed a cell phone and began a call to a cab company. He became embarrassed when people saw him, and he ended the call. The men then went to Wal-Mart, where they purchased cigarettes and stole gloves to prevent leaving fingerprints in the planned robbery. The defendant asked a man in the Wal-Mart parking lot if he could use his cell phone, and the man referred him to a nearby pay phone. The defendant called a cab company and asked for a pickup at Gloria's, a nearby bar. The defendant told Gildhouse he had done his part. He said although he intended to commit the armed robbery, he had no intent to shoot anyone.

The cab company dispatched Wallace Badeaux to pick up the defendant and Gildhouse at Gloria's. When Mr. Badeaux stopped the cab in the parking lot at

---

[1] The facts of the plan and the actual robbery and shooting are taken from the videotaped law enforcement interview of the defendant, admitted into evidence at trial as Exhibit S-24A and shown to the jury.

802 Fox Run, the defendant and Gildhouse pulled their weapons on Mr. Badeaux, and the defendant told him to give them his money. Mr. Badeaux gave them about $35, and they retrieved more money from the cab's visor, for a total of about $100. Mr. Badeaux asked them not to shoot him and told them he had a child. The defendant thought the robbery was going well, with Mr. Badeaux being totally cooperative. Gildhouse handed the money to the defendant, who put it in his pocket. The defendant then took the key to the vehicle from Mr. Badeaux, who started to cry. The defendant then put his gun in the waistband of his pants. The defendant said before he knew what was happening, Gildhouse got out of the cab and shot Mr. Badeaux in the head.

The defendant and Gildhouse ran from the cab and eventually made their way back to their vehicle, which was parked at Gloria's. Along the way, the defendant threw the cab's key into a field. The defendant said he was simply in the wrong place at the wrong time, and there was nothing he could do to prevent the murder. He told law enforcement "that man did not need to be shot at all."

About a week later, Gildhouse and his girlfriend threw the murder weapon, the .357, into a coulee by the defendant's apartment. Sergeant Guy Vizena of the Lafayette Parish Sheriff's Office testified he recovered the .357 from a canal on Cameron Street. Police recovered the cab's key in the field exactly where the defendant told them it would be.

Sergeant Larry Brown of the Lafayette Parish Sheriff's Office testified the defendant and Gildhouse were identified by a tip from the public in late February or early March. The department's Special Reaction Team (SRT) was called to apprehend the suspects at the defendant's apartment on March 1 or 2, 2009. They

2

recovered a Taurus .38 Special and six .38 Special bullets from Gildhouse during the subsequent search.

Dr. Joel Carney, stipulated to be an expert in forensic pathology, testified Mr. Badeaux died from a gunshot wound to the neck. The entrance wound was on the back left side of Mr. Badeaux's neck. Dr. Carney testified the shot was fired "from about six inches out to two to four feet." The gunshot exited the right cheek at the back portion of the jaw. The bullet passed through the C1 and C2 vertebrae, causing damage to the spinal cord and the brain stem, and the vertebral artery, cutting it into two segments.

Christopher Harold Henderson testified as a forensic chemist with the Acadiana Crime Lab. Forensic testimony showed the bullet introduced into evidence as Exhibit S-3 was fired from the Taurus .357 Magnum revolver introduced into evidence as Exhibit S-13G. DNA analysis showed the presence of the defendant's DNA on a left-handed glove, and the defendant could not be excluded as the contributor of DNA found on a jacket recovered as evidence.

On February 23, 2009, a grand jury indicted the defendant and Gildhouse for the first degree murder and armed robbery of Wallace Badeaux, violations of La.R.S. 14:30 and 14:64. Trials of the co-defendants were severed by the trial court's order of November 9, 2009. On the state's motion, the trial court amended the indictment on January 20, 2011, to second degree murder, a violation of La.R.S. 14:30.1(A)(2), and robbery while armed with a dangerous weapon, a violation of La.R.S. 14:64.

The defendant's counsel admitted the armed robbery to the jury in his opening statement at trial, after stating the defendant's agreement to that admission on the record. On August 15, 2012, the jury found the defendant guilty of second

degree felony murder and armed robbery. The trial court sentenced the defendant on the murder conviction to mandatory life imprisonment without benefit of parole, probation, or suspension of sentence on September 13, 2012.[2] The defendant appeals, arguing the murder and the underlying felony of armed robbery did not form a continuous transaction sufficient to support a conviction for felony murder.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there is one error patent. Additionally, the court minutes of sentencing are in need of correction.

The defendant was convicted of second degree murder and armed robbery. As noted above, a life sentence was imposed for second degree murder. In reviewing the record to determine whether a sentence was imposed for the armed robbery conviction, we note that at the close of trial the judge indicated that in light of the jury's finding that the second degree murder conviction was based on felony murder, she would not impose a sentence for the armed robbery conviction to avoid a double jeopardy violation. Under the particular situation presented in this case, we find there is a double jeopardy violation as error patent and set aside the conviction for armed robbery because "[t]he remedy for a double jeopardy violation for multiple punishments for the same offense is to vacate the *conviction and sentence* for the less severely punishable offense[.]" *State v. Grace*, 10-1222, pp. 14-15 (La.App. 3 Cir. 4/6/11), 61 So.3d 812, 823, *writ denied*, 11-961 (La.

---

[2] Because the second degree murder conviction was based on a killing during the commission of a felony, the trial court did not sentence Defendant on the armed robbery conviction. La.R.S. 14:30.1(A)(2).

4

10/21/11), 73 So.3d 382 (emphasis added). As noted above, the trial court did not impose a sentence for armed robbery, but the conviction was left intact.

The defendant was originally charged with first degree murder, amended to second degree murder under the felony murder provision. The jury verdict sheet clearly indicates the jury's second degree murder conviction was based on felony murder as opposed to specific intent. The defendant's statement to law enforcement admitted in evidence at trial reveals that the shooting occurred during the commission of the armed robbery of Mr. Badeaux. There is no indication that any other felony offense served as the underlying felony for the second degree murder conviction. Accordingly, we hereby vacate the defendant's conviction for armed robbery.

Next, although the sentencing transcript indicates the court imposed the defendant's life sentence at hard labor, the court minutes of sentencing do not reflect this. "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, the trial court is instructed to correct the court minutes to reflect that the defendant's life sentence is to be served at hard labor.

## ASSIGNMENT OF ERROR

The defendant claims the evidence failed to establish that the murder and the underlying felony of armed robbery formed part of a continuous transaction without a significant break in the chain of events. The defendant believes his act of obtaining the cab's ignition key indicates he intended to flee without inflicting further harm to Mr. Badeaux when Gildhouse shot and killed him. The defendant did not testify to this intention at trial or at any other time in the trial court.

This argument is essentially a claim of insufficiency of the evidence required to convict him. The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165; *State v. Lubrano*, 563 So.2d 847 (La.1990)). The appellate court's function is not to assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

The factfinder's role is to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than insuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27). Our supreme court has stated:

> However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction,

an appellate court must preserve " 'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.' " *McDaniel v. Brown,* 558 U.S. [120], [133], 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

*State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378. Murder occurs during the commission of an enumerated felony when "the murder and the felony form a continuous transaction without a significant break of events." *State v. Ramsdell,* 09-1510, p. 9 (La.App. 3 Cir. 10/6/10), 47 So.3d 78, 84 (citing *State v. Goodley,* 01-77 (La. 6/21/02), 820 So.2d 478).

The defendant in *State v. Cooper*, 03-161 (La.App. 3 Cir. 12/23/03), 862 So.2d 512, *writ denied,* 04-236 (La. 6/4/04), 876 So.2d 74, was with the man who actually shot and killed the victim during an armed robbery in which they both participated. The defendant went to the scene with the shooter, did nothing to prevent the shooting, did not act surprised by the shooting, jumped into the victim's vehicle with the shooter, returned to the shooter's house with the still-living victim in the vehicle, and accompanied the shooter to a remote location to dispose of the vehicle and the victim. This court affirmed the defendant's conviction as a principal to second degree murder because the defendant was a participant in the armed robbery in which the victim was killed.

In *State v. George*, 39,772 (La.App. 2 Cir. 7/1/05), 908 So.2d 79, the defendant attempted to forcibly rape a woman before putting her in the trunk of her

vehicle and driving away. The victim was able to open the trunk, but she fell from the vehicle and died from injuries sustained hitting the roadway. The defendant claimed the victim's death and the attempted rape were too far apart in time to constitute a continuous transaction. The second circuit found it significant that the defendant never left the victim during the chain of events that culminated in her death. It affirmed the defendant's conviction for second degree murder.

Here, the defendant's brief points out the defendant took the cab's ignition key from Mr. Badeaux prior to the shooting. He contends, "[a]rguably[,] this would have prevented the victim from driving away and notifying the police before the defendant could get away."

The defendant fails to present any evidence from the record to suggest this is why he took the keys to the cab. He did nothing to try to prevent the murder, and he ran from the scene without attempting to obtain help for the victim. Throughout Defendant's interview at the time of his arrest, he told of taking the key to the cab and throwing it in a field. He never mentioned any reason for taking the key.

The evidence shows the defendant actively planned and participated in an armed robbery that resulted in the murder of the victim. Mr. Badeaux was murdered within seconds of the armed robbery. The defendant was sitting in the back seat of the vehicle when the fatal shot was fired. He ran from the scene, disposed of the key, and never reported the crime to the authorities. He initially denied any involvement in the crime, claiming he was "clueless" about why he was being questioned. The evidence sufficiently establishes murder during the perpetration of the armed robbery that formed part of a continuous transaction with no significant break in the chain of events, even though the defendant himself may not have been the shooter. The defendant's argument lacks merit.

## CONCLUSION

The defendant's conviction for armed robbery is vacated and his second degree felony murder conviction is affirmed. The trial court is instructed to correct the court minutes of sentencing to reflect that the defendant's life sentence is to be served at hard labor.

**CONVICTION FOR ARMED ROBBERY VACATED.**
**CONVICTION FOR SECOND DEGREE MURDER AFFIRMED.**
**REMANDED WITH INSTRUCTIONS.**