NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 KA 0455

STATE OF LOUISIANA

VERSUS

JESSE SCHIELE

Decision Rendered: **FEB 2 4 2021**

* * * * * * *

ON APPEAL FROM
THE 20th JUDICIAL DISTRICT COURT
EAST FELICIANA PARISH, LOUISIANA
DOCKET NUMBER 19-CR-295, DIVISION A

HONORABLE KATHRYN E. JONES, JUDGE

* * * * * * *

Samuel C. D'Aquilla
District Attorney
Molly G. O'Flynn
Assistant District Attorney
Clinton, Louisiana

Attorneys for Appellant
State of Louisiana

Thomas C. Damico
Baton Rouge, Louisiana

Attorney for Defendant/Appellee
Jesse Schiele

BEFORE:  McDONALD, HOLDRIDGE, and PENZATO, JJ.

**McDONALD, J.**

The East Feliciana Parish grand jury charged defendant, Jesse Schiele, by bill of indictment, with first degree murder, a violation of La. R.S. 14:30. He pled not guilty. Defendant filed a motion to quash on the ground of improper venue, and the State filed an opposition to the motion. After considering the motion, the trial court granted it. The State now appeals, challenging the trial court's ruling. For the following reasons, we affirm the granting of the motion to quash.

## STATEMENT OF FACTS[1]

On March 9, 2019, fishermen discovered the body of Timmy Daniels in a brush pile in the Amite River in East Feliciana Parish. The East Feliciana Parish Sheriff's Office (EFPSO) took charge of the investigation. The body was located downriver of a bridge near the address of 131 Highway 37 in Clinton, Louisiana, and investigators believed this was most likely where Mr. Daniels was put into the river. The body had apparently been "deceased for weeks," and an initial inspection of the body revealed an obvious gunshot wound to the forehead. The body was clothed in shorts, sweatpants, and tennis shoes, but with no shirt or jewelry. A palm print recovered from the body was determined to belong to Mr. Daniels, who had been reported missing by his mother to police on February 21, 2019.

EFPSO conducted an extensive investigation, most of which occurred in East Baton Rouge Parish. The investigation revealed that Durell Collins, Edward Brooks, defendant, and a juvenile, J.B, were involved in Mr. Daniels' death. The Baton Rouge Police Department had already developed Mr. Brooks as a suspect in Mr. Daniels' disappearance before the recovery of his body. The police investigation indicated Mr. Daniels was shot in East Baton Rouge Parish "just above the eye line, near the center of the forehead" and in the upper right leg. These gunshot wounds were determined to be the cause of death. A subsequent autopsy indicated there was no water in Mr.

---

[1] The facts regarding the events at issue are taken from the offense reports and pleadings included in the record and the trial court's written reasons for judgment. We note that no authenticated evidence or live testimony has been entered into the record below. Nothing in this opinion should be construed as comment on the admissibility or weight of any potential evidence that may be introduced at a trial. Moreover, we make no comment about any other aspects of the case as part of our review of the district court's ruling in granting defendant's motion to quash.

2

Daniels' lungs or debris in his mouth, suggesting Mr. Daniels was dead before he was thrown into the Amite River.[2] The autopsy also indicated that the bullet fired into Mr. Daniels' forehead lodged in his brain.

Statements given to police provided a general outline of the events leading to Mr. Daniels' death.[3] On the evening of February 10, 2019, Mr. Daniels, Mr. Brooks, and J.B. rode together in a vehicle driven by defendant to Mr. Collins' residence on Ozark Street in Baton Rouge, Louisiana, to obtain marijuana. Upon their arrival, Mr. Daniels asked Mr. Collins via social media to come outside, pulled a gun on Mr. Collins, and demanded the marijuana.[4] An exchange of gunfire ensued, in which Mr. Daniels[5] was shot in the head and leg, and Mr. Collins sustained a bullet wound in the left forearm and a bullet grazed his chest. A decision was made to not bring Mr. Daniels to a hospital. Instead, defendant drove to the Highway 37 bridge, where some of Mr. Daniels' clothes were removed and he was thrown over the side of the bridge into the Amite River. Blood found in the vehicle defendant was driving the day of the homicide was forensically determined to match Mr. Daniels' DNA profile.

---

[2] The State charged Mr. Brooks, Mr. Collins, and defendant with the first degree murder of Mr. Daniels in the same bill of indictment and prosecuted them under the same docket number. All three defendants filed motions to quash based on improper venue, which motions the trial court granted. In addition to the instant appeal, the State also appealed the trial court's granting of Mr. Collins' motion to quash in 2020 KA 0453 and Mr. Brooks' motion to quash in 2020 KA 0454.

Although the appellate record before us does not include Mr. Daniels' autopsy report and some Baton Rouge Police Department reports, those documents are included in the appellate record in 2020 KA 0454. Under Uniform Rules of Louisiana Courts of Appeal, Rule 2-1.14, "[a]ny record lodged in this court may, with leave of court, be used, without necessity of duplication, in any other case on appeal or on writ[,]" we have reviewed the autopsy report and the Baton Rouge Police Department reports included in the appellate record in 2020 KA 0454 that are necessary to adequately review the issues raised in this appeal. *See Berthelot v. Berthelot,* 17-1332 (La. App. 1 Cir. 7/18/18), 254 So.3d 735, 738 n.2; *State v. Mosley,* 08-1318 (La. App. 5 Cir. 5/12/09), 13 So.3d 705, 708 n.2.

[3] Defendant was the only one to claim the shooting took place at a different location. Defendant reported Mr. Daniels was shot by the occupant of a gray Honda Accord in Baton Rouge, while Mr. Daniels, Mr. Brooks, and defendant were in the vehicle defendant drove. Though defendant denied ever being at the Highway 37 bridge, cell phone records placed his phone there along with Mr. Brooks' phone on the night of the shooting.

[4] There were conflicting statements regarding whether the robbery of Mr. Collins was a common plan among the men or solely that of Mr. Daniels.

[5] Mr. Collins denied shooting Mr. Daniels or that he sold drugs, but he also asked police why he was being charged with murder "when he was robbed on his own property and that the two people that dumped his body got caught." Multiple bags of suspected marijuana and a rifle were recovered from Mr. Collins' bedroom at the Ozark Street address, in addition to another firearm and additional narcotics recovered from common areas in the shared residence. Entrance and exit bullet holes were found in the vehicle defendant was driving.

3

J.B. gave several statements to police over the course of the investigation. In his first statement, J.B. stated he was at Mr. Brooks' rap studio with Mr. Brooks, Mr. Daniels, and another unknown person, when Mr. Daniels received a call and left in possibly a black Honda. Later, J.B. acknowledged being present during the robbery of Mr. Collins but claimed he was dropped off in Baton Rouge after the robbery. J.B. stated that Mr. Daniels was alive and in obvious pain when J.B. exited the car. In his final statement, J.B. told police he had not been truthful in the prior interviews and that he was at the bridge when Mr. Daniels was thrown into the river. J.B. said that after arriving at the bridge, when Mr. Daniels was removed from the vehicle, "he was still making noises and was possibly still alive."

In its written reasons for judgment, the trial court found that the accounts of the incidents "consistently stated that a shooting occurred in Baton Rouge where Mr. Daniels sustained gunshot wounds to his head and right leg." The court also found the autopsy report persuasive as it indicated "there was no water present in Mr. Daniels' lungs nor was there any debris in his mouth."[6] This led the court to conclude Mr. Daniels was more likely than not dead before being thrown in the river. Though the court recognized J.B. provided some inconsistent statements regarding Mr. Daniels breathing and making noises, it found they did not "outweigh the medical evidence in the autopsy report[.]" In conclusion, the court found "[n]o acts constituting the offense of murder or necessary elements of that charge occurred in East Feliciana Parish[,]" and the State was "unable to meet its burden of showing by a preponderance of the evidence" that any element of the offense occurred in East Feliciana Parish.

### ASSIGNMENT OF ERROR: MOTION TO QUASH

In its sole assignment of error, the State contends the trial court erred in granting defendant's motion to quash based on its finding that Mr. Daniels' murder and robbery more likely than not occurred entirely within East Baton Rouge Parish. The State argues that while the robbery of Mr. Collins was completed within East Baton

---

[6] The autopsy's "External Examination" section states the finding that the nares and oral cavity are "free of foreign material and abnormal secretions." The report's "Respiratory System" section states the finding that "[t]he upper airway is clear of debris and foreign material."

Rouge Parish, Mr. Daniels' killing was not completed until a still-breathing Mr. Daniels was thrown into the Amite River in East Feliciana Parish, ensuring his death. Moreover, the State asserts that a robbery of Mr. Daniels was not even begun until he was disrobed immediately before he was thrown over the side of the bridge in East Feliciana Parish. Finally, the State claims the events leading to the robberies and murder occurred in a moving vehicle that traveled through East Baton Rouge and East Feliciana Parishes. In short, the State maintains venue is proper in East Feliciana Parish because the evidence suggests that while the murder began in East Baton Rouge Parish, it was concluded in East Feliciana Parish. At the crux of the State's argument is the assertion that J.B. told police he believed Mr. Daniels was still alive immediately before he was thrown into the river. Consequently, the State reasons, an effect of each of the criminal acts (*i.e.,* the killing and the robbery) took place in East Feliciana Parish, making venue most properly there.

Defendant claims Mr. Daniels was shot and killed while the vehicle involved was parked outside Mr. Collins' home on Ozark Street in East Baton Rouge Parish. At the core of defendant's argument is that Mr. Daniels' killing was wholly completed in East Baton Rouge Parish. Defendant argues that the location where Mr. Daniels' body was discovered has no bearing on venue when the exact location of his murder is known.

Venue is not an essential element of the offense; rather, it is a jurisdictional matter. *See* La. C.Cr.P. arts. 611A & 615. Objections to venue must be raised by a motion to quash to be ruled on by the court in advance of the trial. *State v. Ford,* 17-0471 (La. App. 1 Cir. 9/27/17), 232 So.3d 576, 584. The State bears the burden of proving venue by a preponderance of the evidence. La. C.Cr.P. art. 615; *State v. Parker,* 12-1550 (La. App. 1 Cir. 4/26/13), 116 So.3d 744, 749.

Venue is a factual question and, on appeal, review is limited to whether the State submitted some evidence of proper venue. *State v. Skipper,* 387 So.2d 592, 594 (La. 1980). As such, review of the issue on appeal is not concerned with weighing the sufficiency of the State's evidence. *State v. Eason,* 19-0614 (La. App. 1 Cir. 12/27/19), 293 So.3d 61, 72. When a trial court rules on a motion to quash, factual and credibility

5

determinations should not be reversed on appeal in the absence of a clear abuse of the trial court's discretion. However, a trial court's legal findings are subject to a *de novo* standard of review. *State v. Williams,* 18-1795 (La. App. 1 Cir. 5/31/19), 2019 WL 2317162, *5, *writ denied,* 19-01028 (La. 1/14/20), 291 So.3d 682; *see also State v. Love,* 00-3347 (La. 5/23/03), 847 So.2d 1198, 1206; *Eason,* 293 So.3d at 72.

Louisiana Code of Criminal Procedure article 611 pertinently provides:

A. All trials shall take place in the parish where the offense has been committed, unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred.

B. If the offender is charged with any criminal homicide enumerated in R.S. 14:29 or any other crime involving the death of a human being and it cannot be determined where the offense or the elements of the offense occurred, the offense is deemed to have been committed in the parish where the body of the victim was found.

Louisiana Code of Criminal Procedure article 611 does not refer to *any* act related to the offense; it refers to "acts constituting an offense" or the "elements of an offense." Where a body is found, *and it is unknown where the actual killing took place,* proper venue lay in the parish where the victim's body was discovered. La. C.Cr.P. art. 611B. Further, the place where the effect of the criminal conduct occurs is an important consideration in determining whether the charged criminal acts have substantial contacts with the venue chosen for prosecution. *State v. Hayes,* 01-3193 (La. 1/28/03), 837 So.2d 1195, 1199 *(per curiam).*

The trial court, the State, and defendant all cite this court's recent decision in *State v. Gross,* a case involving a killing alleged to have occurred in East Feliciana Parish, but factually having substantial connections to East Baton Rouge Parish. *State v. Gross,* 18-1014 (La. App. 1 Cir. 2/25/19), 273 So.3d 317, *writ denied,* 19-00498 (La. 9/17/19), 278 So.3d 972. In *Gross,* the defendant succeeded in quashing the charges filed in East Baton Rouge Parish where there was a question as to where the victim actually died. Though the victim's body was found in the trunk of his own car in Baton Rouge, Mr. Gross told police that the victim had been run over and struck in the head

6

with a hammer by another individual about 100 yards inside East Feliciana Parish.[7]  Mr. Gross directed police to the scene, and evidence was recovered that tended to confirm his story.  Mr. Gross, who admitted to assisting the assailant in putting the victim in the trunk of the victim's car in East Feliciana Parish, told police he believed the victim was already dead due to the amount of blood he observed.  *Id.* at 319-20.  Investigators learned from the forensic pathologist that the "massive trauma to the head and neck areas" of the victim were the "most fatal" of his injuries.  *Id.* at 323.

In *Gross,* the trial court granted the motion to quash, finding the State had not shown by a preponderance of the evidence that the victim was either assaulted or died within the borders of East Baton Rouge Parish.  On review, this court recognized that before Mr. Gross informed police of the specifics of the victim's murder, venue would have been proper in East Baton Rouge Parish.  *See* La. C.Cr.P. art. 611B.  However, after Mr. Gross made verifiable claims regarding the manner of the victim's death, venue was most proper in East Feliciana Parish.  *See* La. C.Cr.P. art. 611A.  Additionally, the *Gross* court found the State was unable to show that any element of the offense occurred in the vehicle while traveling in East Baton Rouge Parish.  *See* La. C.Cr.P. art. 612.  Finally, given that venue is a question of fact, this court found the State had not established an abuse of the great discretion afforded to the fact finder's determination.  *Gross,* 273 So.3d at 321-23.

Here, the State is correct when it argues that, at the time Mr. Daniels' body was found in the Amite River, venue was proper in East Feliciana Parish.  However, as in *Gross,* a subsequent investigation revealed the most likely location of Mr. Daniels' death was in another parish.  We cannot say the trial court abused its considerable discretion when it found that, more likely than not, Mr. Daniels was shot in the head and killed in East Baton Rouge Parish.[8]  This conclusion is supported by the forensic finding that

---

[7] Louisiana Code of Criminal Procedure article 614 provides that an offense committed on the boundary line of two parishes or within one hundred feet thereof is deemed to have been committed in either parish.

[8] The court also takes judicial notice that the most direct route between the Ozark Street address and the Highway 37 bridge is just over 26 miles.  The East Feliciana Parish line is about 25 miles from Ozark Street.

there was no water present in Mr. Daniels' lungs and no debris in his mouth. It is certainly not unreasonable for the trial court to have concluded the more likely scenario was that Mr. Daniel died in East Baton Rouge Parish. It is worth noting that, but for the discovery of Mr. Daniels' body, the investigation of his murder was conducted entirely within East Baton Rouge Parish, albeit mostly by the EFPSO. The trial court evidently did not find that the "charged criminal acts [had] substantial contacts with the venue chosen for prosecution." *Hayes*, 837 So.2d at 1199. Consequently, the State has not shown the trial court abused its discretion in making the factual determination that Mr. Daniels was more likely than not shot and killed in East Baton Rouge Parish. Additionally, even assuming defendant can be convicted of first-degree murder based on the underlying armed robbery of Mr. Collins,[9] it is undisputed that Mr. Collins' robbery occurred entirely at or near the Ozark Street address in East Baton Rouge Parish.

The State, nonetheless, maintains that there were two armed robberies that support the charge, one in East Baton Rouge Parish and one in East Feliciana Parish. The State contends the second alleged robbery supports venue in East Feliciana Parish. The State points out that Mr. Daniels was disrobed of some of his clothing in East Feliciana Parish, and even accepting the trial court's finding that the victim died in East Baton Rouge Parish, the State further argues: "Louisiana jurisprudence does not distinguish between the armed robbery which occurs before the killing of the victim and the robbery of the victim whom the defendant has already killed." *State v. Goodley*, 01-0077 (La. 6/21/02), 820 So.2d 478, 484.

However, a murder occurs during the commission of an enumerated felony when the murder and the felony form a continuous transaction without a significant break of events. *State v. Francois*, 12-1438 (La. App. 3 Cir. 6/5/13), 114 So.3d 678, 683; *see also, State v. Joshlin*, 99-1004 (La. 1/19/00), 752 So.2d 834, 837 (to determine venue, a court must first identify the conduct of the offense and then discern the location of

---

[9] *See, e.g., State v. Lutz*, 17-0425 (La. App. 1 Cir. 11/1/17), 235 So.3d 1114, 1127.

8

the commission of the criminal acts). Additionally, first-degree felony murder requires proof that the defendant specifically intended to kill or to inflict great bodily harm on the victim *during the perpetration or attempted perpetration* of certain felonies. *State v. Weary*, 03-3067 (La. 4/24/06), 931 So.2d 297, 310. In this case, the same evidence relied on by the State to establish the armed robbery in East Feliciana Parish further indicates that Mr. Daniels' clothing was taken "because [it] belonged to Brooks and that Brooks was concerned that his DNA would be on it ... . Brooks even mentioned taking [Mr. Daniels'] shoes from him to keep anyone from finding his DNA." Thus, considering the specific evidence relied on by the State, we cannot say the trial court abused its discretion in finding the preponderance of the evidence presented by the State and defendant showed "[n]o acts constituting the offense of murder or necessary elements of that charge occurred in East Feliciana Parish." In other words, even assuming *arguendo* that Mr. Collins was working in concert with defendant and Mr. Brooks, something the State does not explicitly allege, the break in events between Mr. Daniels' killing on or near Ozark Street and later robbery on the Amite River bridge results in venue for the charged offense being most proper in East Baton Rouge Parish.

Because we conclude the trial court did not abuse its discretion, we affirm the trial court's granting of defendant's motion to quash.

**RULING ON MOTION TO QUASH AFFIRMED.**

9